**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 8 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

PAMELA S. PILGRIM,

Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

Defendant-Appellee.

No. 99-5152
(D.C. No. 95-CV-543-M)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **EBEL** , and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Pamela S. Pilgrim appeals from the district court's decision affirming the Commissioner's denial of her application for Social Security disability insurance benefits. We review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *See Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). Finding her arguments for reversal unpersuasive, we affirm for the reasons stated below.

Ms. Pilgrim filed her application for benefits in April 1992, alleging disability since March 1991 due to carpal tunnel syndrome in both wrists. Her application was denied administratively, and in June 1995, she filed a complaint in the district court challenging the denial of benefits. Because the transcript of the hearing could not be located, the parties agreed to a remand for a second hearing before the same administrative law judge who conducted the first hearing. Following the second hearing in September 1996, the ALJ again denied Ms. Pilgrim's application, and that denial was again affirmed by the Appeals Council, making the ALJ's second decision the final decision of the Commissioner for purposes of this appeal.

In his decision, the ALJ found that Ms. Pilgrim was severely impaired by bilateral carpal tunnel syndrome and fibromyalgia, but that she had the residual functional capacity to do the full range of light and sedentary work limited by an

inability to do continuous grasping and constant repetitive work with her hands. Because the ALJ found she could not do her past relevant work, the claim reached the fifth step of the five-step analysis, at which point the burden was on the Commissioner to show there were jobs in the national economy that Ms. Pilgrim could perform. *See Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998). The ALJ noted that she would not be considered disabled under the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 202.21 and 202.22. Relying on these rules and the testimony of a vocational expert that there were a variety of jobs Ms. Pilgrim could perform with her limitations, the ALJ found her not disabled and denied her application for benefits.

On appeal, Ms. Pilgrim raises four arguments, the first two of which are related to the ALJ's consideration of the various medical opinions regarding the severity of her impairments. She contends that the ALJ violated the treating physician rule by rejecting the opinion of treating physician Dr. Farrar that she was disabled. She also contends that the ALJ erred by relying on the incomplete and biased opinion of a consultative examining physician, Dr. Sutton.

Doctors' opinions regarding Ms. Pilgrim's ability to return to work were mixed, and only Dr. Farrar concluded that she was totally disabled. Dr. Vosburgh performed carpal tunnel surgery on her right wrist, and on followup, concluded in July 1991 that she could return to work without any limitations. In August 1991,

Dr. Letcher performed surgery on her other wrist, and he concluded in November 1991 that she could return to her job as a custodian. A few days later, she visited a hand specialist, Dr. Clendenin, who diagnosed arthritis in her thumbs and concluded that she was temporarily disabled. Following a work hardening program, Dr. Clendenin noted that she still had pain but that he did not think she would benefit from further medical or surgical care. In May 1992 he released her to do light or sedentary work that did not require lifting more than five or ten pounds with either hand or doing repetitive work. In October 1992, Dr. Farrar diagnosed fibromyalgia in the cervical and thoracic regions that was related to her wrist pain. In March 1992 and January 1993, Dr. Farrar concluded, apparently for workers compensation purposes, that she was thirty to thirty-five percent disabled in each hand and he recommended vocational rehabilitation. On examination in October 1993, Dr. Sutton concluded that she exhibited no objective evidence of disability, although he concluded she would be limited to lifting fifty pounds occasionally due to the residual effects of her impairments. The next day, another consultative examining physician, Dr. Miller, concluded that she was sixty percent disabled "to the body as a whole" due to her hands and twenty percent disabled due to depression. In January 1994 and September 1996, Dr. Farrar wrote that she was permanently and totally disabled.

The treating physician rule requires the Commissioner generally to give substantial weight to the opinion of a claimant's treating physician and to provide specific legitimate reasons for rejecting such an opinion. *See, e.g.*, *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987). Recognizing the treating physician rule, the ALJ rejected Dr. Farrar's opinion because it was conclusory, not supported by clinical and laboratory diagnostic techniques, and inconsistent with other evidence in the record, reasons we have recognized as legitimate, *see id.* The record supports the ALJ's conclusion. Dr. Farrar's January 1993 opinion stated she was in need of vocational rehabilitation and aptitude testing, indicating he thought she could still work. His two subsequent brief opinions of total disability referred generally to her fibromyalgia and wrist problems, but did not identify what these impairments precluded her from doing or how her condition had deteriorated. None of his other reports or clinical notes indicated that she was totally disabled, nor would they support such an opinion.

In challenging the ALJ's reliance on Dr. Sutton's opinion, Ms. Pilgrim argues that it shows bias and that it was based on an inadequate examination because it did not include a variety of tests she contends should have been performed. We see no evidence of bias. On its face, Dr. Sutton's opinion is supported by his examination. To the extent Ms. Pilgrim argues he should have performed additional tests, any deficiency in the tests performed might go to the

weight to be given to his opinion, but not to its validity as medical evidence per se. Moreover, in his decision, the ALJ noted Dr. Sutton's opinion, but in discussing the specific evidence he relied on to determine Ms. Pilgrim's ability to work, he referred to the opinions of Drs. Vosburgh, Letcher and Clendenin, not that of Dr. Sutton. It thus appears the ALJ did not place much if any weight on this opinion. Weighing conflicting medical opinions is the responsibility of the ALJ, *see Casias*, 933 F.2d at 801, and we conclude the ALJ did not err in assessing either Dr. Farrar's or Dr. Sutton's opinions.

Ms. Pilgrim next argues that the ALJ did not analyze her allegation of disabling pain and depression in accordance with the requirements of *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987), and *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). In his decision, the ALJ considered the objective and subjective evidence of her pain, along with her daily activities and the effects of the medication she takes, in concluding her pain was not disabling. His analysis of her pain met the requirements of *Luna* and *Kepler.* The ALJ also recognized that Ms. Pilgrim at times suffered from depression. He considered the medications she took to control it, her testimony regarding its effect on her activities, and the medical opinion diagnosing it as mild dysthymic disorder in determining that it would not affect her ability to work. Again, we see no reversible error in the ALJ's analysis.

-6-

Finally, Ms. Pilgrim contends that the ALJ did not consider all of her impairments individually and in combination because he did not address the effect of her tendonitis and arthritis of her thumbs. There is no indication that these alleged impairments had any effect other than on Ms. Pilgrim's use of her hands, and the ALJ considered her hand limitations in determining her residual functional capacity. We see no error in this regard.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge