**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ROBERT DEWEY,

       Plaintiff-Appellant,

  v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant-Appellee.

No. 05-3329
(D.C. No. 03-CV-1385-JTM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH, McKAY**, and **BALDOCK**, Circuit Judges.

Plaintiff-appellant Robert Dewey appeals from the order entered by the

district court affirming the Social Security Commissioner's decision denying his

applications for disability insurance benefits and supplemental security income

benefits under the Social Security Act. Exercising jurisdiction under 42 U.S.C.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

§ 405(g) and 28 U.S.C. § 1291, we reverse and remand for further proceedings.

## I.

Plaintiff filed his applications for benefits on September 14, 1998. On July 15, 1999, a hearing was held before an administrative law judge (ALJ). In a decision dated July 27, 1999, the ALJ denied plaintiff's applications for benefits at step five of the five-step sequential evaluation process for determining disability, finding that: (1) because plaintiff had filed prior applications for benefits, "August 1, 1998 is the earliest date on which the issue of disability can be considered," Aplt. App., Vol. 1 at 17; (2) since August 1, 1998, plaintiff has suffered from severe physical impairments in the form of hepatitis C and chronic obstructive pulmonary disease and a severe mental impairment in the form of an adjustment disorder manifested by a depressed mood; (3) plaintiff did not retain the residual functional capacity (RFC) to perform the medium to heavy physical exertion requirements of his past relevant work as a welder and plastics cutter; but (4) plaintiff retained the RFC to perform the physical exertion requirements of some light work; and (5) based on the hearing testimony of the vocational expert, plaintiff was capable of making a vocational adjustment to work in jobs within ten percent of the entire light, unskilled occupational base, which included the jobs of information clerk and ticket seller, both of which existed in significant numbers in the national economy.

In April 2002, the Appeals Council denied plaintiff's request for review of the ALJ's decision. In October 2003, plaintiff filed a complaint in the district court, and the district court subsequently entered an order and a related judgment affirming the denial of plaintiff's applications for benefits in June 2005. This appeal followed.

Without recounting the specific events involved in the delays, we note that the proceedings pertaining to plaintiff's request for review and district court case were delayed for a number of reasons. Although, at this point, we do not wish to assign blame for the delays, we urge the Commissioner to expedite plaintiff's case and promptly address this matter in accordance with the rulings and remand instructions set forth below.

## II.

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision, "we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the decision only to determine whether the correct legal standards were applied and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Doyal*, 331 F.3d at 760. "Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

In this appeal, plaintiff claims the ALJ committed reversible error by: (1) failing to properly assess his credibility; (2) failing to give controlling weight to the opinions of his treating physicians; and (3) failing to properly evaluate his RFC at step five. As set forth herein, we agree with plaintiff that the ALJ's RFC finding is not supported by substantial evidence in the record. We therefore remand this matter for reconsideration of plaintiff's RFC, and, given our disposition of the RFC issue, we do not need to address plaintiff's other alleged errors. In addition, because plaintiff has asserted in this appeal that his primary disabling condition is the fatigue caused by his liver disease, we will limit our analysis to that physical impairment. *See* Aplt. Opening Br. at 17, 23; Aplt. Reply Br. at 3; *see also* Aplt. App., Vol. I at 22 (setting forth ALJ's finding that "[f]atigue is certainly supported by the nature of the claimant's liver disease").

**A. The ALJ's RFC Finding.**

As set forth above, the ALJ denied benefits at step five. At step five, "after the claimant has established at step four that he . . . cannot return to his . . . past relevant work, the burden shifts to the [Commissioner] to show that the claimant retains the residual functional capacity . . . to do other work that exists in the national economy." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993);

-4-

*see also id.* at 1491 (noting that, at step five, "[i]t is not [the claimant's] burden . . . to prove [he] cannot work at any level lower than [his] past relevant work; it is the [Commissioner's] burden to prove that [he] can"). "The [Commissioner] meets this burden if the decision is supported by substantial evidence, and, therefore, the ALJ's decision is reviewed for substantial evidence." *Id.* at 1487 (quotation and citations omitted).

"RFC is what an individual can still do despite his or her limitations," and it constitutes "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, . . . may cause . . . limitations or restrictions that may affect his or her capacity to do work-related . . . activities." Soc. Sec. R. 96-8p, 1996 WL 374184, at *2. To determine a claimant's RFC, the ALJ must therefore assess the claimant's ability to perform the "physical demands of work activity, such as sitting, standing, walking, [and] lifting." 20 C.F.R. §§ 404.1545(b), 416.945(b).[1] Further, the ALJ must assess "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis," and this requires the ALJ to "describe the maximum amount of each work-related activity the individual can perform." Soc. Sec. R. 96-8p, 1996 WL 374184, at *7. In

---

[1]     All citations herein to the Code of Federal Regulations are to the regulations that were in effect at the time of the ALJ's decision in July 1999.

addition, "[t]he RFC assessment must be based on all of the relevant evidence in the case record," including medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, medical source statements, effects of symptoms, and evidence from attempts to work. *Id.* at *5. Finally, the ALJ "must . . . make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.*

To determine the physical exertion requirements of work in the national economy, the Commissioner has classified "jobs as *sedentary*, *light*, *medium*, *heavy*, and *very heavy*." 20 C.F.R. §§ 404.1567, 416.967. Here, we are dealing with a claimant whose physical abilities put him in either the sedentary or the light work categories. The Commissioner uses the following definitions for these categories:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> (b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

*Id.* at  §§ 404.1567(a)-(b), 416.967(a)-(b).

As these definitions indicate, the ability to perform "a good deal of walking or standing . . . [is] the primary difference between sedentary and most light jobs."  Soc. Sec. R. 83-10, 1983 WL 31251, at *5.  The Commissioner has further delineated the differences between these two work categories by defining the ability to perform "the *full range* of light work" as being able to "stand[] or walk[], off and on, for a total of approximately 6 hours of an 8-hour workday."  *Id.* at *6 (emphasis added).  By contrast, sedentary work requires "periods of standing or walking [that] should generally total no more than about 2 hours of an 8-hour work day."  *Id.* at *5.

As noted above, the ALJ found that plaintiff retained the RFC to perform "the exertional demands of some light work," Aplt. App., Vol. I at 24, and he specifically assessed plaintiff's ability to perform such work as follows:

> The evidence supports a finding that with normal rest periods and breaks [plaintiff] is able to occasionally lift and carry up to 20 pounds and up to 10 pounds frequently; to stand and walk about 30 minutes at a time up to a total of 4 hours in an 8 hour work day; and to sit about 1 hour at a time up to a total of 6 hours in an 8 hour workday.

*Id.*  Given this RFC determination, as well as the hearing testimony of the vocational expert, the ALJ further found that plaintiff retained "the capacity for 10% of the light unskilled occupational base represented by such jobs as information clerk and ticket seller."  *Id.* at 27.

Having thoroughly reviewed the record in this matter, we do not find any errors in connection with the ALJ's assessment of plaintiff's ability to lift, carry, and sit. We do have a problem with the ALJ's assessment of plaintiff's ability to walk and stand, however, and we conclude that the assessment is not supported by substantial evidence in the record.

As set forth in the ALJ's decision, plaintiff testified at the hearing that: (1) he is able to stand for about thirty minutes at a time; (2) he can walk one block, but must rest for fifteen to twenty minutes afterwards; and (3) he requires a thirty-minute to two-hour nap each day. *Id.* at 18. Further, the ALJ accurately summarized plaintiff's routine daily activities as follows:

> fixing breakfast, washing the dishes, doing 3 loads of laundry (on a weekly basis), assisting his son in mowing the yard at a very slow pace, vacuuming and other light household chores. He shops for his own groceries and drives a car, . . . but gets tired driving after 8-10 miles. He visits friends every week.

*Id.* at 19. In addition, plaintiff also "goes fishing regularly, [and] engages in activities with his younger children." *Id.* at 22.

This evidence regarding plaintiff's daily activities is certainly relevant to the RFC determination, but it is also quite equivocal in terms of providing a meaningful benchmark concerning plaintiff's ability to stand and walk over the course of an entire eight-hour work day. Nonetheless, the ALJ seized on plaintiff's descriptions of his daily activities, as described in plaintiff's hearing

-8-

testimony and the questionnaires that he completed, *id.* at 161-73, to conclude that "[a] significant amount of physical ability and ambulation is reflected by [plaintiff's] earlier statements." *Id.* at 22. The ALJ further concluded that "[t]he claimant has indicated in testimony a significant ability to stand, walk, sit and lift." *Id.* at 23.

While the ALJ properly took into account plaintiff's statements regarding his daily activities in determining plaintiff's RFC, the statements, standing alone, do not provide substantial evidence to support the ALJ's finding that plaintiff can stand and walk for a total of four hours each work day. First, the ALJ's conclusion that plaintiff had indicated a "significant ability" to walk is not supported by plaintiff's hearing testimony, because, as set forth above, plaintiff testified that he had a very limited ability to walk. *Id.* at 40-41. In addition, while plaintiff testified that he could stand for thirty minutes while doing the dishes, *id.* at 41, he was not asked how long he could stand over the course of an entire work day, and none of the questionnaires that he completed address that issue.

Second, the daily activities enumerated by plaintiff in his testimony and questionnaires were not significant enough to take him out of the general rule that "evidence that a claimant engages in limited activities . . . does not establish that the claimant can engage in light or sedentary work activity." *Thompson*, 987 F.2d

at 1491 (quotation omitted). As a result, the evidence concerning plaintiff's daily activities cannot constitute the substantial evidence that is required to support the ALJ's RFC determination. *Id.*

Finally, for purposes of evaluating plaintiff's ability to walk and stand, the medical evidence in the record is inconclusive and does not provide substantial support for the ALJ's RFC finding. In fact, the medical evidence from one of plaintiff's treating physicians seems to undercut the ALJ's finding that plaintiff can perform some light work, because Dr. Kairouz opined that plaintiff should have a "more desk related [job] if possible so it will fit his physical needs." Aplt. App., Vol. 1 at 297.

As noted above, the ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Soc. Sec. R. 96-8p, 1996 WL 374184, at *5. To properly evaluate a claimant's RFC, an ALJ is obligated to develop the record even where, as here, the claimant is represented by counsel. *See Thompson*, 987 F.2d at 1492. Consequently, because the record did not contain sufficient evidence upon which to base an RFC finding, the ALJ should have recontacted plaintiff's treating physicians to obtain additional information. *See* 20 C.F.R. §§ 404.1512(e), 416.912(e); *see also White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). Alternatively, if the necessary information was not readily available from plaintiff's treating physicians, the ALJ should have

required plaintiff to attend a consultative examination at the Commissioner's expense. *See* 20 C.F.R. §§ 404.1512(f), 416.912(f); *see also Thompson*, 987 F.2d at 1491 ("The ALJ, however, finding no evidence upon which to make a finding as to RFC, should have exercised his discretionary power to order a consultative examination of [the claimant] to determine her capabilities.").

Accordingly, the judgment of the district court is REVERSED, and this case is REMANDED to the district court with instructions to remand the case to the Commissioner for further proceedings before the ALJ. Specifically, in accordance with the standards set forth above, the ALJ shall obtain the information necessary to properly reconsider plaintiff's RFC, and the ALJ must then reconsider whether plaintiff was disabled at step five during the relevant time period. We emphasize that no particular result is dictated by our remand. As stated above, however, we urge the Commissioner to expedite plaintiff's case and promptly address this matter in accordance with the rulings and remand instructions set forth herein. The Commissioner's cooperation in this regard will be greatly appreciated.

Entered for the Court

Bobby R. Baldock
Circuit Judge